IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Center for Biological Diversity,   ) | Case No. 11-1241 |
| )   Plaintiff,   ) | |
| )   v.   ) | PLAINTIFF'S MOTION FOR EXPEDITED CONSIDERATION OF ITS MOTION FOR SUMMARY JUDGMENT, AND REQUEST FOR STATUS CONFERENCE |
| Salazar, *et al.*,   ) | |
| )   Defendants.   ) | |

Plaintiff Center for Biological Diversity ("Center") hereby moves for expedited consideration of its motion for summary judgment, filed today.  Dkt. 3.  Plaintiff respectfully requests an expedited briefing schedule and resolution of its motion for summary judgment in order to ensure timely resolution of all claims in this case before July 16, 2011.  The Center also requests a status conference as soon as the Court's schedule allows in order to address how this case should proceed.

In support of its motion for expedited consideration, the Center proposes the following schedule, which will allow time for the government to file a response to plaintiff's motion:

| | |
|---|---|
| Plaintiff's Motion for Summary Judgment | July 7, 2011 (filed) |
| Defendants' Response Brief | July 13, 2011 by 4:00 p.m. |
| Telephonic Status Hearing | July 14 or 15, 2011 |

As the above schedule reflects, in order to allow more time for defendants to file a response to plaintiff's motion, plaintiff is willing to have this matter resolved entirely within the next week and without filing a reply brief.  Plaintiff also believes that the legal issues presented in its motion for summary judgment are straightforward, and that any questions the Court may have about plaintiff's position can be resolved more expeditiously during a hearing with the Court.  Plaintiff's counsel would be willing to appear before the Court telephonically or

personally on July 14 or July 15, 2011 in order to facilitate timely resolution of this case before the permitted event commences.

The reasons for this motion, including the basis for plaintiff's request for expedited summary judgment rather than preliminary injunctive relief, are as follows:

1. On February 26, 2011, the National Speleological Society ("NSS") applied for a "special recreation permit" from BLM to use three caves on BLM lands administered by the agency's field office near Glenwood Springs, Colorado, to conduct trips to the three caves during its annual cavers' convention. *See* Dkt. 4-1 at 12-14.[1] The permit is required under the Federal Land and Policy Management Act, 43 U.S.C. §§ 1701–87 ("FLPMA"), and FLPMA's implementing regulations at 43 C.F.R. Part 2930.

2. NSS's application was submitted less than 180 days before the start of the convention, which is scheduled for July 16-24, 2011. FLPMA's implementing regulations require at least 180 days for BLM to consider and process a permit for a special recreation permit. 43 C.F.R. § 2932.22(a) ("for all uses requiring a Special Recreation Permit … , you must apply to the local BLM office at least 180 days before you intend your use to begin.").

3. BLM held a "scoping" public comment period for the NSS application pursuant to the National Environmental Policy Act, 42 U.S.C. §§ 4321-4370h ("NEPA"), which began on March 14, 2011 and concluded on April 18, 2011.

4. On June 27, 2011 – or, just under three weeks before the start of the convention – BLM's Colorado River Valley Field Office ("CRVFO") released the Environmental Assessment for the SRP, which purported to consider the environmental consequences of issuing the SRP for the NSS convention. Dkt. 3-18. BLM also released a Decision Record which reflected the

---

[1] In this motion, all citations to specific pages of documents filed in support of plaintiff's motion for summary judgment are to the PDF page citation, not the internal page number in the footer.

agency's decision to permit up to 10 trips to LaSunder Cave and 12 visits to Anvil Points Cave during the NSS convention. Dkt. 3-19. In the EA, BLM acknowledged the risk that the cavers' trips to LaSunder Cave and Anvil Points Cave – both of which provide habitat for at least two species of bats – could result in the contamination of these caves with White-Nose Syndrome. Dkt. 3-18 at 26-27, 33-34.

5. A growing number of scientists and policymakers are recognizing that human transmission – specifically, through contamination and then use in other caves of the gear and clothing of recreational cavers – is a likely vector for spreading the fungus associated with White-Nose Syndrome, *Geomyces destructans*. Dkt. 3-4 at ¶¶ 11-14; Dkt. 3-6; Dkt. 3-11; Dkt. 3-12; Dkt. 3-13; Dkt. 3-14. Many are saying that the best way to avoid contamination of new bat-inhabited caves with White-Nose Syndrome is by restricting human access. Fallback measures consist of decontamination protocols which are tedious and likely ineffective. Dkt. 2-18 at 35; Dkt. 3-4 at ¶ 14.

6. White-nose Syndrome is a terrible disease that is wiping out bat populations almost everywhere it is found. Dkt. 3-18 at 24-25; Dkt. 4-1 at 6-10. Thus, if BLM's decision to issue the SRP results in contamination of LaSunder Cave or Anvil Points Cave, it is likely that White-Nose Syndrome will spread rapidly among and kill off the vast majority of the bats that live in or visit these caves. Dkt. 3-18 at 24-25. Contamination of the caves will likely result in 90-100 percent bat mortality, require decades for bat populations to recover, if at all, spread White-Nose Syndrome to other bats and other caves, and speed the progression of the deadly disease. *Id*. at 25; Dkt. 3-4 at ¶ 10; Dkt. 3-10 at 3. Contamination of LaSunder or Anvil Point Caves would also mean that the disease is introduced to the western United States, and thus, to yet another region of North America. Dkt. 3-4 at ¶ 11; Dkt. 3-11 at 3.

7.      It is impossible to quantify the likelihood of such contamination – yet, there is no serious dispute that contamination is possible.  Were plaintiff required to seek injunctive relief in order to stop the SRP from being issued to NSS, plaintiff would arguably be required to demonstrate that contamination is "likely", in accordance with *Winter v. NRDC, Inc.*, 555 U.S. 7 (2008) (plaintiffs seeking preliminary relief must demonstrate that irreparable injury is *likely* in the absence of an injunction) (emphasis added).[2]

8.      Thus, while contamination very well could occur and *could in fact be likely*, scientists and experts cannot predict or quantify the degree of likelihood of this.  That said, if NSS cavers *do* contaminate caves during their convention, if the effects of White-Nose Syndrome on bat populations in other regions of the country and Canada are any prediction, it is all but certain that Colorado bat populations will be decimated and the disease will be introduced to the West.  If this were to occur, the effects to plaintiff's interests – as well as to society's interests in nature's best pest controller – would be devastating.  Dkt. 3-2; Dkt. 3-3; Dkt. 3-4.

9.      Were the Court to require plaintiff to demonstrate the likelihood of irreparable harm by moving for a preliminary injunction, or were the Court to deny this motion for expedited consideration, plaintiff would be prejudiced by BLM's actions in connection with processing the permit.  BLM failed to require the amount of time required by FLPMA's regulations – 180 days – to process the NSS application.  Dkt. 3-26 (application dated Feb. 26,

---

[2]  There appears to be an open question about whether the "sliding scale" approach survives *Winter* – the sliding scale test would permit the Court to grant an injunction where there is a particularly strong likelihood of success on the merits even if there is relatively slight showing of irreparable injury.  *See*, *e.g.*, *Defending Animal Rights Today & Tomorrow v. Washington Sports & Entertainment, LP*, 2011 U.S. Dist. LEXIS 56272 at *7-8 n.3 (D.D.C. May 24, 2011); *id*. (declining to decide "the viability of the sliding scale approach" post-*Winter*).  Plaintiff is not asking this Court to decide this issue in this case, however, because vacatur based on expedited summary judgment will adequately redress plaintiff's injuries.  Dkt. 3-2; Dkt. 3-3; Dkt. 3-4 (declarations).

2011).  Then, BLM took until June 27, 2011, just a few weeks before the convention, to issue its Decision Record.  In contrast, the Forest Service issued its decision on a similar permit application for the convention to use lands on the White River National Forest, which is near the Colorado River Valley BLM District, an entire month earlier, on May 26, 2011.  Dkt. 3-29.  Plaintiff should not be prejudiced by BLM's delay and failure to require adequate time to process the NSS application.  The Court should endeavor to avoid such an inequitable result.

10.     In light of *Winter* as well as recent changes to Fed. R. Civ. P. 56(b) which allow parties to file a motion for summary judgment as soon as they initiate a complaint, thus eliminating the prior requirement that litigants wait 21 days before moving for summary judgment, the nature of plaintiff's request for expedited consideration is reasonable, even if previously atypical.  *See* Fed. R. Civ. P. 56(b) (Notes of Advisory Committee on 2010 amendments) (stating that the rule "allows a motion for summary judgment to be filed at the commencement of an action" and that "scheduling orders or other pretrial orders can regulate timing to fit the needs of the case").  Indeed, plaintiff is aware of at least one other relatively recent case in the U.S. District Court for the District of Columbia where plaintiffs requested expedited consideration of their motion for summary judgment in order to prevent injuries to their interests.  *See Sierra Club, et al. v. Antwerp, et al.*, 560 F. Supp. 2d 21, 26 (D.D.C. 2008) (granting plaintiffs' motion for summary judgment and denying motion for expedited consideration as moot).

11.     The Center filed declarations in support of its motion for summary judgment prepared by members of the Center for Biological Diversity ("Center").  *See* Dkt. 3-2; Dkt. 3-3; Dkt. 3-4 (declarations).  These declarations show that members and staff of the Center have concrete scientific, environmental, recreational, and aesthetic interests in healthy bat populations

in the Colorado River Valley BLM District, and that there is a substantial possibility that these interests will be injured as a result of BLM's decision to issue the SRP.  *Id.*; *see also Florida Audubon Soc'y v. Bentsen*, 94 F.3d 658, 678 (D.C. Cir. 1996) ("NEPA injury entails simply the 'risk of serious environmental harm,' not the certainty of environmental harm").  In addition, these declarations show that plaintiff was entitled to certain procedural safeguards pursuant to FLPMA and NEPA that CRVFO failed to provide in issuing the SRP.  3-4 at ¶ 19-20; 3-3 at ¶ 9.  Thus, the Center and its members have suffered procedural injuries as a result of CRVFO's actions, which can be redressed by an Order vacating the Decision Record.

12. Where the timing of the challenged action is imminent, moving for "preliminary" relief is rendered meaningless.  Principles of judicial economy thus weigh in favor of resolving plaintiff's entire case on the pending motion for summary judgment.  If not, the matter must proceed with plaintiff making a showing that its claims should be heard because they are capable of repetition, yet evading review.  Avoiding that result, and deciding this case now, would be the most efficient use of judicial resources.

In summary, although the circumstances presented by this case are less than ideal from a case management perspective, principles of equity and judicial economy favor granting plaintiff's request for expedited consideration of its motion for summary judgment.

In addition, plaintiff is requesting a status conference as soon as the Court's schedule allows, to discuss plaintiff's request for expedited consideration as well as any related matters – *e.g.*, how to resolve this case on expedited consideration before defendants have an opportunity to prepare an "administrative record" for this case.[3]

---

[3] On this question, plaintiff would be willing to agree to stipulate to resolve its motion for summary judgment based on the exhibits attached to the Declaration of Mollie Matteson, Dkt. 3-4, which was filed in support of its motion for summary judgment, and any additional records

In accordance with L.R. 7.1(m), counsel for plaintiff contacted counsel for defendants, who stated that they oppose plaintiff's request for expedited consideration. However, counsel for defendants stated that defendants do not oppose a status conference as soon as the Court's schedule permits.

DATED: July 8, 2011					Respectfully submitted,

					*/s/ Amy Atwood*
					Amy Atwood (D.C. Bar No. 470258)
					CENTER FOR BIOLOGICAL DIVERSITY
					P.O. Box 11374
					Portland, Oregon  97211-0374
					Phone: (503) 283-5474
					Email: atwood@biologicaldiversity.org

					Bethany Cotton (OR Bar No. 090960)
					*pro hac vice* application pending
					CENTER FOR BIOLOGICAL DIVERSITY
					P.O. Box 11374
					Portland, Oregon 97211-0374
					Phone: (202) 591-5215
					Email: bcotton@biologicaldiversity.org

---

defendants intend to rely on in their opposition brief (presuming any such records would otherwise qualify for inclusion in the administrative record for the CRVFO's Decision Record).